IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LORIE LEROUX | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO.  3-10-CV-2634-M-BD |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security | § | |
| | § | |
| Defendant. | § | |

**FINDINGS AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Lorie Leroux seeks judicial review of a final adverse decision of the Commissioner

of Social Security pursuant to 42 U.S.C. § 405(g).  For the reasons stated herein, the hearing decision

should be reversed.

I.

Plaintiff alleges that she is disabled due to a variety of ailments, including interstitial cystitis,

inflammatory bowel disease, musculoskeletal disorders, and depression.  After her application for

disability benefits was denied initially and on reconsideration, plaintiff requested a hearing before

an administrative law judge.  That hearing was held on December 3, 2009.  At the time of the

hearing, plaintiff was 41 years old.  She has an eleventh-grade education and past work experience

as a receptionist and a dental assistant.  Plaintiff has not engaged in substantial gainful activity since

March 1, 2006.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability benefits.

Although the medical evidence established that plaintiff suffered from severe musculoskeletal

-1-

disorders and inflammatory bowel disease, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the Social Security regulations. The ALJ further determined that plaintiff had the residual functional capacity to perform the full range of sedentary work, including her past relevant work as a receptionist, provided she has ready access to restrooms. Plaintiff appealed that decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II.

In multiple grounds for relief, plaintiff contends that: (1) the ALJ failed to apply the proper legal standard in evaluating the opinions of her treating physician; (2) the ALJ erred in finding that her mental impairments and interstitial cystitis were non-severe; (3) the ALJ did not identify the relevant Listings or explain why plaintiff's interstitial cystitis failed to meet a Listing; (4) the ALJ failed to conduct a "function-by-function" residual functional capacity assessment; and (5) the assessment of her residual functional capacity is not supported by substantial evidence.

## A.

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *see also Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993). It is more than a scintilla but less than a preponderance. *See Richardson*, 91 S.Ct. at 1427. The district court may not reweigh the evidence or substitute its judgment for that of the Commissioner, but must

-2-

scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *Id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1.  The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2.  The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3.  The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. This determination is made using only medical evidence.

4.  If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5.  If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See generally*, 20 C.F.R. § 404.1520(b)-(f). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing other work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995), *citing Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *Id.* However, procedural perfection is not required. The court will reverse an administrative ruling only if the claimant establishes prejudice. *See Smith v. Chater*, 962 F.Supp. 980, 984 (N.D. Tex. 1997).

B.

Among the arguments made by plaintiff is a single ground that compels remand -- the ALJ failed to apply the proper legal standard in evaluating the opinions of her treating physician. The opinion of a treating physician is generally entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

-4-

inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2);

*Spellman v. Shalala*, 1 F.3d 357, 364 (5th Cir. 1993). Even if a treating source opinion is not given

controlling weight, it is still entitled to deference "and must be weighed using all of the factors

provided in 20 CFR 404.1527 and 416.927." SSR 96-2p, 1996 WL 374188 at *4 (SSA Jul. 2, 1996);

*see also Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). These factors require consideration of:

1. the physician's length of treatment of the claimant;

2. the physician's frequency of examination;

3. the nature and extent of the treatment relationship;

4. the support of the physician's opinion afforded by the medical evidence of record;

5. the consistency of the opinion with the record as a whole; and

6. the specialization of the treating physician.

20 C.F.R. § 404.1527(c). A treating source opinion cannot be rejected absent good cause for reasons

clearly articulated in the hearing decision. *See Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir.

2001). More specifically, the ALJ must clearly articulate the weight given to the treating source

opinion:

> [T]he notice of the determination or decision must contain specific
> reasons for the weight given to the treating source's medical opinion,
> supported by the evidence in the case record, and must be sufficiently
> specific to make clear to any subsequent reviewers the weight the
> adjudicator gave to the treating source's medical opinion and the
> reasons for that weight.

SSR 96-2p, 1996 WL 374188 at *5.

Dr. Paul Bierig, a pain management specialist, treated plaintiff for abdominal pain on at least

24 occasions between August 10, 2007 and June 26, 2009. (*See* Tr. at 472-76, 588-620, 629-65,

744-48, 774-84).  Although Dr. Bierig could find "no apparent cause" for the pain, he diagnosed

plaintiff variously with chronic cystitis, neuritis, somatic complaint disorder, and irritable bowel

syndrome. (*See id.*). On December 11, 2009, eight days after the administrative hearing, Dr. Bierig

completed a medical assessment of plaintiff's ability to perform work-related activities. (*Id.* at 770-

73). In that assessment, Dr. Bierig reported that plaintiff was not impaired in her ability to lift, carry,

stand, walk, or sit, and had no postural, manipulative, or environmental limitations. (*Id.* at 770-72).

Still, Dr. Bierig opined that plaintiff's impairments or treatment would cause her to be absent from

work "[a]bout twice a month[,]" and prevented her from "performing a full-time job that is 8 hours

per day, five days per week, on a regular and continuing basis[.]" (*See id.* at 772).  When asked to

explain why his treatment notes were inconsistent with his opinion, Dr. Bierig stated, "[t]here are

no objective findings as to the cause of her pain other than her physocologocal [*sic*] issues[.]" (*See

id.* at 773).

Despite Dr. Bierig's opinion about plaintiff's absenteeism and inability to work full-time on

a regular basis, the ALJ concluded that plaintiff had the residual functional capacity to perform a full

range of sedentary work, including her past relevant work as a receptionist. (*Id.* at 21).  In reaching

that conclusion, the ALJ did not so much as mention the medical assessment performed by Dr.

Bierig, much less explain his reasons for rejecting the doctor's opinion. (*See id.* at 15-22).[1]  The

failure to provide such an explanation constitutes error. *See Hammond v. Barnhart*, 124 Fed.Appx.

847, 851, 2005 WL 548253 at *2 (5th Cir. Mar. 8, 2005); *Redic v. Astrue*, No. 3-10-CV-1056-K-BD,

2011 WL 4398173 at *3 (N.D. Tex. Sept. 6, 2011), *rec. adopted*, 2011 WL 4398170 (N.D. Tex.

Sept. 21, 2011).

---

[1] Although the medical assessment was performed after the administrative hearing, it was provided to the ALJ before his decision was issued on March 9, 2010.

The Commissioner offers a number of a reasons why this error does not require a remand. First, the Commissioner argues that plaintiff has not identified any specific medical finding that should have been considered by the ALJ. However, in her brief, plaintiff references the medical source statement prepared by Dr. Bierig on December 11, 2009, including his opinion about her absenteeism and inability to work full-time. (*See* Plf. MSJ Br. at 16). The Commissioner also points out that the ALJ asked about Dr. Bierig's records at the administrative hearing and stated that he considered all the evidence in reaching his decision. However, neither fact relieves the ALJ of his obligation to give "specific reasons," clearly articulated in the hearing decision, for rejecting the opinion of a treating source. While the ALJ need not follow "formalistic rules," he may not dispense with the "articulation" requirement altogether. *See Myers*, 238 F.3d at 621.

Nor was Dr. Bierig's opinion about plaintiff's absenteeism a general conclusion. Even if the ALJ was not required to give controlling weight to Dr. Bierig's opinion that plaintiff could perform a full time job on a regular and continuing basis, the doctor also determined that plaintiff's impairments or treatment would cause her to miss work "[a]bout twice a month[.]" (*See* Tr. at 772). Other courts have held that similar opinions by treating physicians are entitled to controlling weight. *See, e.g. Pearson v. Astrue*, No. 5-11-CV-1502, 2012 WL 3044296 at *9 (N.D. Ohio Jun. 25, 2012), *rec. adopted*, 2012 WL 3044297 (N.D. Ohio Jul. 25, 2012) (assessment by treating physician that plaintiff would miss work more than three times a month due to impairments constituted medical opinion entitled to controlling weight); *Ploesser v. Apfel*, No. CV-98-1543-ST, 2000 WL 92811 at *15-18 (D. Or. Dec. 11, 1998) (same as to medical assessment that plaintiff would miss two days of work per month). To the extent the Commissioner argues that the level of absenteeism described by Dr. Bierig would not affect plaintiff's ability to work, the court disagrees. The inability to work

two days a month would preclude plaintiff from working five days a week approximately half the time, casting doubt on whether she can work on a "regular and continuing basis." *See* SSR 96-8p, 1996 WL 374184 at *1 (SSA Jul. 2, 1996) (ability to work on a "regular and continuing basis" means ability to perform work-related physical and mental activities "8 hours a day, for 5 days a week, or an equivalent work schedule"). Indeed, some vocational experts have opined that an individual who must miss two days of work per month cannot maintain competitive employment. *See, e.g. Weber v. Astrue*, No. 1-10-CV-0359, 2011 WL 6016636 at *8 (N.D. Ind. Dec. 2, 2011); *Ploesser*, 2000 WL 92811 at *18. Had the ALJ properly evaluated Dr. Bierig's medical opinion, he may well have concluded that plaintiff might be absent from work twice a month due to her impairment or treatment. Such a conclusion might have affected the testimony of Suzette Skinner, a vocational expert who testified that a hypothetical person with plaintiff's limitations could work as a receptionist. (*See* Tr. at 58).

Finally, the ALJ's failure to properly consider Dr. Bierig's medical opinion is not rendered harmless because it was based on plaintiff's subjective complaints of pain and past inability to perform a regular work schedule. "This court may not affirm the hearing decision on any ground other than the grounds cited by the ALJ." *Peacock v. Astrue*, No. 3-10-CV-0193-BD, 2012 WL 1003776 at *4 (N.D. Tex. Mar. 26, 2012), *citing SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947). "Rather, the hearing decision must stand or fall with the reasons set forth therein." *Id.*, *citing Newton*, 209 F.3d at 455. Where, as here, the ALJ fails to articulate *any reason* for rejecting the opinions of a treating physician, remand is required. *Id.*; *see also Sorgee v. Astrue*, No. 7-10-CV-042-BD, 2011 WL 3837060 at *3-4 (N.D. Tex. Aug. 26, 2011) (remand required where ALJ rejected opinions of treating physician without clearly articulating reasons for

decision); *Morgan v. Astrue*, No. 3-10-CV-0167-BH, 2010 WL 2697170 at *8 (N.D. Tex. Jul. 7, 2010) (same where ALJ failed to mention opinion of treating physician or provide good cause for rejecting the opinion).

C.

Plaintiff also asks the court to transfer this case to another ALJ on remand. The selection of a new ALJ on remand is ordinarily a decision for the Commissioner to make. *See Travis v. Sullivan*, 985 F.2d 919, 924 (7th Cir. 1993). Absent proof of bias or partiality toward the claimant, the court will not interfere with this administrative decision. *See Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996); *Joe v. Apfel*, No. 97-CV-722S(H), 1998 WL 683771 at *5-6 (W.D.N.Y. Jul. 10, 1998), *as amended*, 1998 WL 726262 (W.D.N.Y. Oct. 2, 1998).

Here, plaintiff alleges that questions about her family's financial situation reveal bias on the part of the ALJ. (*See* Plf. MSJ Br. at 29-30). In support of this contention, plaintiff cites the following exchange:

> Q.   [BY ALJ]: What sort of work does your husband do?
>
> A.   [BY PLAINTIFF]: He's an auditor[.]
>
> Q.   Okay. What sort of family income, or income would he have annually?
>
> A.   Close to -- around $100,000 I think, close to that.
>
> Q.   Okay. So, obviously, there's no eligibility for SSI. Right, Mr. Skaar?
>
> A.   [BY COUNSEL]: No, Your Honor.
>
> Q.   Okay. That's why it's Title II only.

* * * * *

All right.  So, absent working, even though you're not working, you're not threatening -- you know -- you're not in a situation where you're threatened with the loss of your home or not being able to eat, feed, or clothe yourself, are you? Right?

A.   [BY PLAINTIFF]: Well, there's -- the bills are mounting up, and my husband is under pressure, and I -- from my loss of income.

Q.   Your peak income was how much?

A.   What was it, $25,000?

Q.   Let me check your record here.

A.   I'm not sure.

Q.   I mean, everybody benefits financially by having an increased income, as long as they don't go wild on their excesses, so anytime a family's income is cut by being reduced from two to one, that's felt.  Right?  Of course.  Right?

A.   Yes, sir.

Q.   It's self-evident.  And yes, your income was as high as $25,760 back -- and actually, more than that.  In 2005, it was over $26,000.  Your husband was working then, too.  Right?

A.   Yes, sir.

Q.   I don't want to go too long on this, but it's obvious that, at around $100,000 income for yourself and one minor child, and one child is 18, that, with budgeting, you could -- your situation could -- would obviously be much better than that of a person that has no working spouse or the spouse would make a much lower sum, such as twenty or thirty thousand. Right?

A.   I understand what you're saying.

-10-

Q.      All right.  In other words, it's always helpful -- it's always been helpful to have your additional income, but it's not something that's absolutely essential to make sure you and your two children, or especially your minor child, continue to be fed and clothed.  Right?

A.      I think that it is.

Q.      Okay.  [INAUDIBLE].

A.      Let me just -- can I say why?

Q.      [INAUDIBLE].

A.      Well, we have mounting medical bills from all the doctors, and the procedures, and tests that I'm undergoing and have undergone, and then, with that -- with no income from myself, we weren't doing well as it is -- as it was, when I was working.  Everybody has, just because they make more money, doesn't mean that they don't have payments.  So we have plenty of bills to pay, just like everyone else, and --

Q.      Do you have insurance?

A.      Yes, sir, but my expenses –

Q.      Through your husband's employer?

A.      Yes, sir.

Q.      Okay.  But you have deductibles and co-pays to pay.

A.      Yes, sir.

Q.      All right.  I'm not going to -- I mean, that's not the major issue in the case, but your financial incentive to work is always an issue in every case.  All right.  You haven't filed for bankruptcy or anything, have you?

A.      No, not yet.

Q.      You have no plans to do that, do you?

-11-

A.    No, I don't plan on --

Q.    As far as you know, you're current on your house payment and any car payments?

A.    We're not current on our house payment, no.

Q.    How far behind are you?

A.    I think we're two months behind, at least.

Q.    Okay.  What's the problem on that?

A.    Money.

Q.    Okay.  All right.  Well, we're not going to get any further into family financing, although you're -- when you say around a hundred, that means maybe it could be a little lower or it could be a little less, but it's at least [INAUDIBLE] above 95, say.

A.    It's pretty close to that.  I would say it's, yes, right around in there.

Q.    Okay.  Have you applied for any jobs, yourself, since March of '06?

A.    No, I've -- they've -- my husband and I have -- I had considered trying, and my husband urged me not to because he didn't think that I would be able to perform, and as it's shown, my lessening of being able to perform a job, as 2005 and 2006 -- he just didn't think I'd be able to do it.

(Tr. at 61-65).  Nothing in this colloquy suggests that the ALJ was biased against plaintiff.  As the

ALJ explained at the hearing, his questions about plaintiff's family income were aimed at

determining whether she had a financial incentive to work.  (*See id.* at 64).  There is no reason to

doubt that explanation, especially since financial motivation to work is a factor that may be

considered in assessing a claimant's credibility.  *See Tommaseti v. Astrue*, 533 F.3d 1035, 1040 (9th

-12-

Cir. 2008) (ALJ reasonably inferred that claimant may not have been motivated to work due to financial reserve); *Ramirez v. Barnhart*, 292 F.3d 576, 581 n.4 (8th Cir. 2002) (while not dispositive, claimant's financial motivation in seeking disability benefits is relevant to ALJ's credibility analysis).

Nor is transfer warranted because the ALJ failed "to cite or consider a substantial amount of material evidence[.]" (*See* Plf. MSJ Br. at 30). That the ALJ may have overlooked some evidence, without more, is not sufficient to establish an improper or antagonistic motive. *See, e.g. Tusken v. Astrue*, No. 4-08-CV-657-A, 2010 WL 2891076 at *12 n.4 (N.D. Tex. May 25, 2010), *rec. adopted*, 2010 WL 2891075 (N.D. Tex. Jul 20, 2010) (denying transfer request where record did not demonstrate that ALJ acted deliberately or with antagonism); *but cf. Spann v. Barnhart*, No. 3-00-CV-2769-BD (N.D. Tex. Jan. 8, 2002) (recommending transfer where ALJ inappropriately lectured plaintiff on his diet and weight loss efforts, interaction with his doctor, and raising his daughter and grandson before abruptly terminating hearing without explanation); *Palmer v. Barnhart*, 40 Fed. Appx. 278, 284, 2002 WL 1489422 at *6 (7th Cir. Jul. 11, 2002) (same where ALJ made significant errors in decision *and* deprived plaintiff of a full and fair hearing); *Sarchet*, 78 F.3d at 309 (same where "[t]he tone of the administrative law judge's opinion suggests that she may have an unshakable commitment to the denial of this applicant's claim").

## RECOMMENDATION

The hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.[2]

---

[2] By remanding this case for further administrative proceedings, the court does not suggest that plaintiff is or should be found disabled.

-13-

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 27, 2012.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE